[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Lawrence and Sheryl Nadeau appeal the decision of the defendant commissioner of public health and addiction services ordering them to perform lead abatement at premises owned by them in Meriden. The commissioner acted pursuant to General Statutes §§ 19a-111 et seq. The plaintiffs appeal CT Page 2172 pursuant to § 4-183. The court finds in favor of the defendant commissioner.
The essential facts are not in dispute. At all relevant times, the plaintiffs owned a three family house at 614 North Colony Street in Meriden, which they rented to various tenants. On July 7, 1993, a family with a child under the age of six years (hereinafter "Child C") moved into the second floor unit of the plaintiffs' property. Child C had been previously tested, in May 1993, while she was living elsewhere, and found then to have a blood lead level of thirty micrograms per deciliter of blood (expressed as 30 ug/dl). The Meriden Department of Health had determined that Child C's previous residence at 14 Geer Street in Meriden contained toxic quantities of lead.
In July 1994, after she had been living in the plaintiffs' premises for a year, Child C was tested again and found to have a blood lead level of 20 ug/dl. She was still under the age of six years.
A blood lead level of 20 ug/dl or greater constitutes an elevated level requiring official action under General Statutes §§ 19a-111 and 19a-111c and Regs. Conn. State Agencies §19a-111-2.
In August 1994, the Meriden Department of Health conducted an investigation of the plaintiffs' property and determined that it contained toxic levels of lead in both the interior of the building and in the exterior soil. The Meriden department also determined that there were children under the age of six years residing in the first and third floor units in addition to Child C on the second floor.
Following the investigation, but before any orders were issued, Child C and her family, residing on the second floor, moved out.
On October 3, 1994, the Meriden department issued orders to the plaintiffs requiring them to undertake a lead abatement project on both the interior and exterior of the premises, including the exterior soil.
The plaintiffs appealed those orders to the defendant commissioner, who appointed a hearing officer to conduct a hearing de novo and to render a proposed decision. Following the CT Page 2173 hearing, on April 25, 1995, the hearing officer issued a proposed decision affirming the Meriden department's orders with some minor modifications.
In accordance with General Statutes § 4-179, the commissioner heard oral argument on the proposed decision and, at that time, admitted into the record evidence offered by the plaintiffs showing that Child C had been tested yet again in December 1994, after the Meriden department had issued its orders. That test showed a blood lead level of 17 ug/dl.
On June 30, 1995, the commissioner rendered the final decision in the case, substantially adopting the hearing officer's proposed decision and ordering (1) the abatement of lead in all defective surfaces in all apartments and common areas of the plaintiffs' premises; (2) the establishment of management plans for the intact surfaces containing toxic levels of lead in the first and third floor apartments; and (3) the abatement of lead in all moveable parts of windows and surfaces of windows that rub against moveable parts of windows in the second floor apartment, where Child C, the child with the elevated blood lead level, had lived.
The plaintiffs advance essentially two arguments in support of their appeal (1) that the defendant commissioner exceeded her statutory authority in issuing the abatement orders; and (2) that the commissioner acted in abuse of her discretion in failing to reopen the hearing to consider the evidence of Child C's later test result, showing the reading of 17 ug/dl.
The plaintiffs argue that General Statutes § 19a-111
required the Meriden department to investigate the source of the lead that caused the elevated blood lead level in Child C prior to her residence in the plaintiffs' premises. That statute also requires the local health agency to issue abatement orders to the person responsible for such contamination. The plaintiffs argue that the Meriden department did not take any action against the owners of the premises where Child C resided prior to moving to the plaintiffs' premises and thus did not comply with the provisions of § 19a-111. The plaintiffs contend that §19a-111 establishes the 11 exclusive procedure for the issuance of lead abatement orders. Since the Meriden department did not follow that procedure they argue the Meriden department and the defendant commissioner were powerless to issue any abatement orders to the plaintiffs and exceeded their statutory authority CT Page 2174 in doing so.
The plaintiffs' arguments concerning the provisions of General Statutes § 19a-111 overlook the provisions of §19a-111c. Whereas § 19a-111 requires the local health agency to track down the source and cause of lead poisoning when it has been discovered and to take appropriate action against the person responsible, § 19a has a broader range. That statute provides as follows:
 The owner of any dwelling in which the paint, plaster or other materials contain toxic levels of lead and in which children under the age of six reside, shall abate or manage such dangerous materials consistent with regulations adopted pursuant to this section. The commissioner shall adopt regulations, in accordance with chapter 54, establishing removal and abatement requirements and procedures for materials containing toxic levels of lead.
The plain language of that statute indicates that it applies to premises that are contaminated and in which children under the age of six reside whether or not those children have elevated blood lead levels and whether or not the owner of such premises is responsible for conditions causing elevated blood lead levels in anyone. The statute clearly applies to the plaintiffs' premises, which contained toxic levels of lead and in which several children under the age of six resided.
Regs. Conn. State Agencies § 19a-111-2, promulgated in accordance with General Statutes § 19a-111c, provides, in relevant part as follows
 (a) When a child resides in a dwelling unit all defective lead-based surfaces shall be abated. A property owner may not avoid abatement by taking eviction action against a family with a child.
 b) When a child resides in a dwelling all defective exterior surfaces and all defective surfaces in common areas containing toxic levels of lead shall be abated. CT Page 2175
 (c) When a child has an elevated blood-lead level then abatement shall include all lead-based chewable surfaces whether or not that surface is defective and all lead-based movable parts of windows and surfaces that rub against movable parts of windows.
 (d) When a child resides in a dwelling requiring lead abatement, interior dust and exterior soil shall be assessed and if found to be a source or a potential source of elevated blood lead to a child by the director, code enforcement agency, or lead inspector, the soil shall be abated.
 (e) Intact surfaces containing toxic levels of lead except as noted in section 19a-111-2 (c) of regulations of Connecticut State Agencies are not required to be abated by these regulations, however, when a child resides in a dwelling the owner shall have a lead management plan written within sixty (60) days of receipt of inspection results. The plan shall be implemented and kept by the owner and transferred with ownership upon transfer of title. The management plan shall identify the location of intact lead surfaces and describe how these intact surfaces will be monitored on a regular basis by the owner to ensure that if they become defective, the surfaces will be identified and abated. The plan must be submitted to the local director of health or the commissioner upon request.
These regulations plainly authorized the commissioner's order, given the undisputed facts in the case. In the course of its investigation, which was authorized and required by General Statutes § 19a-111, the Meriden department found that Child C and other children under the age of six were residing in the plaintiffs' premises. The Meriden department also found toxic quantities of lead inside and outside the dwelling units. The resulting order was tailored to fit the circumstances of the families residing in the different units. Thus, the abatement measures ordered for the second floor unit, where Child C with an elevated blood level resided, were more stringent than the order CT Page 2176 directed at the first and third floor units, where other young children, whose blood levels had not been determined to be elevated, resided. See subsection (c) of the regulations, above.
In summary, given the undisputed facts of this case, the commissioner's orders conformed precisely to the requirements of General Statutes § 19a-111c and Regs. Conn. State Agencies § 19a-111-2. The plaintiffs' contention that the orders were in excess of authority, therefore, may not be sustained. Even assuming that the Meriden department took no action against the owner of the Geer Street property pursuant to § 19a-111, that fact would not invalidate the action taken with respect to the plaintiffs pursuant to § 19a-111c. Indeed, the Meriden department and the commissioner, on appeal, would have been derelict in performing their plain duties if they had not so acted.
The plaintiffs' second claim of error is that the commissioner refused to reopen the administrative hearing or convene a new hearing in order to consider the report of the December 1994 blood tests performed on Child C. As noted the test showed that the blood lead level had declined to 17 ug/dl. Although the commissioner did not hold a new evidentiary hearing to consider this evidence, she did accept the report as an addition to the record. Furthermore, the commissioner alluded to that new evidence in her decision, stating "a subsequent test beneath the 20 ug/dl threshold would not have necessarily caused the vacating of the orders. At best it would result in a less stringent abatement being required."
In her decision, the commissioner cites Regs. Conn. State Agencies § 19a-111-1(a) for the underlying proposition that the purpose of the lead abatement statutes and regulations is to protect children and adults "from present and future risk of lead poisoning." The commissioner concluded that the abatement orders should be based on the undisputed facts concerning the residents and the contamination of the property at the time the Meriden department performed its investigation and issued its orders. The abatement orders would thus serve to protect those persons in residence at that time as well as future residents. Her conclusion was thus entirely consistent with the general purpose of the law and regulations as she interpreted them. This interpretation of the law and regulations led the commissioner to accord minimal weight to the fact that Child C's blood lead level showed signs of decreasing subsequent to the time when the CT Page 2177 Meriden department acted.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51, 57 — 58 (1991).
Furthermore, this court is required to give significant deference to the commissioner's interpretation of the statutes and regulations cited herein. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissionerof Environmental Protection, 226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." GriffinHospital v. Commission on Hospitals and Health Care, 200 Conn. 489,497 (1986).
These general principles of administrative law, as applied to the facts and circumstances of this case, require the court to affirm the commissioner's conclusions concerning the evidence offered by the plaintiffs of Child C's improved condition.
For all of the reasons set forth above, the commissioner's decision is affirmed and the appeal is dismissed.
MALONEY, J.